Matthew B. McReynolds, State Bar No. 234797
Ronald J. Hackenberg, State Bar no. 315114
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.: (916) 857-6900
Fax: (916) 857-6902
E-mails: mmcreynolds@pji.org, rhackenberg@pji.org

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

GREGG CRAWFORD,

Plaintiff,

v.

TRADER JOE'S COMPANY, a California Corporation

Defendant.

Case No.:

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]**

[Demand for Jury Trial]

**INTRODUCTION**

1. The Plaintiff, Gregg Crawford ("Mr. Crawford"), brings this action against Trader Joe's Company (Trader Joe's), ("Defendant"), a privately-held national chain of neighborhood grocery stores incorporated in the State of California. This action is based on violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and the California Fair Employment and Housing Act, Cal. Govt. Code § 12900 et seq., and the common law tort of Wrongful Termination in Violation of Public Policy.

2. The gravamen of this Complaint is that Defendant refused to accommodate, retaliated against, otherwise discriminated against, and subsequently terminated Mr. Crawford because he asked for an accommodation for his sincerely held religious beliefs. Defendant know or reasonably should know that Mr. Crawford had sincerely held religious beliefs, because he had asserted them and received an initial accommodation for the vaccine previously. Defendant nevertheless failed to accommodate and terminated a 26-year management employee in retaliation for seeking an accommodation.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that federal questions are raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This court has supplemental jurisdiction over Plaintiff's related claims arising under corollary state anti-discrimination law pursuant to 28 U.S.C. § 1367(a), and the common law tort of Wrongful Termination in Violation of Public Policy.

4. Venue is proper in the Central District of California under 42 U.S.C. § 2000e-5(f)(3), in that the Plaintiff resides within the Central District; the Defendant maintains significant operations within the Central District; and the location of the grocery store where the alleged unlawful employment practices took place is within the Central District. This case is further appropriate for assignment to the Riverside Division in that the Plaintiff resides in Riverside County, the Defendant maintains significant operations within Riverside Counties, and the situs of the alleged unlawful employment practices was the Defendant's Rancho Cucamonga store and

during a private meeting with a Vice President at Riverside Plaza in Riverside, California.

**PARTIES**

**Plaintiff**.

5. At all times relevant herein, Mr. Crawford resides in Riverside County and was an employee of Defendant Trader Joe's.

**Defendant**

6. Upon information and belief, Trader Joe's Company (Trader Joe's) is a privately held national chain of neighborhood grocery stores operating throughout the United States, incorporated in California. Its corporate headquarters is in Monrovia, Los Angeles County, California. At the time of the events giving rise to this Complaint, Plaintiff was employed by Trader Joe's as a Captain (Store Manager) of the Rancho Cucamonga store.

**STATEMENT OF FACTS**

7. Mr. Crawford had been employed by Trader Joe's for 26 years, during which he performed in an exemplary manner.

8. Mr. Crawford is a devout Christian and has so identified throughout his adult life.

9. As a Christian, he believes the Bible to be authoritative. Mr. Crawford believes the Bible is the living word of God and does his best to live in accordance with its Holy teachings. Like many evangelical Christians, he holds strong beliefs based on his understanding of Scripture.

10. Trader Joe's President, Jon Basalone, announced that all Captains must be vaccinated against COVID-19 by July 16, 2021, unless they have a medical or religious accommodation.

11. Mr. Crawford requested an initial accommodation to the vaccine due to his sincerely held religious beliefs. The accommodation was granted.

12. After the initial accommodation to the vaccine had been granted, on July 15, 2021, at approximately 3:05 PM, Mr. Crawford received a call from Regional Manager, Donnie Martin, stating that "upper management" had come to a decision that the upcoming Leaders Meeting would be for vaccinated people only. Further, the Regional Manager said that it is still their

expectations for Captains to attend, and Mr. Crawford's non-attendance was going to negatively affect his performance review. Mr. Crawford pointed out that he was being penalized for his religious convictions. VP Martin told him that this decision was from the President and he was just relaying the message. There was nothing further to discuss.

13. The Leaders Meeting, an annual event that sets goals and strategies for Captains (Store Managers), was scheduled for August 24, 2021, in North Carolina. The meeting was held remotely via Zoom last year, due to COVID-19.

14. Mr. Crawford, through his legal counsel, sent a letter to Human Resources Director, Laurie Mead, pointing out that refusing to allow him to attend the meeting because he was not vaccinated, when he had a religious exemption/accommodation from the COVID-19 vaccination, and at the same time subjecting him to adverse job actions for non-attendance, was a discriminatory act. Mr. Crawford could not attend because he wasn't vaccinated, but he had been given an initial accommodation from the vaccination because of his sincerely held religious beliefs. The company was well aware of his sincerely held religious beliefs.

15. The letter to Ms. Mead requested an accommodation from the decision to prohibit Mr. Crawford's attendance based on his sincerely held religious beliefs. The letter actually suggested several accommodations that would allow Mr. Crawford to attend the meeting. One was to have him attend remotely by Zoom, which was done last year. The other accommodation was for Mr. Crawford to undergo COVID-19 testing shortly before the meeting. The letter pointed out that because of the numerous "breakthrough" cases of COVID-19 in vaccinated people, it would actually be safer to attend with someone who definitively did not have COVID-19. The letter also cited the law under Title VII of the Civil Rights Act of 1964 and noted that the State of California had similar protections for employees.

16. The letter was transmitted electronically to Laurie Mead on July 27, 2021, at 2:36 PM. Very shortly thereafter, at 3:43 PM, Kathryn Cahan, Trader Joe's General Counsel, replied by email to the letter. The response stated that the Regional Vice President would provide Mr. Crawford with a summary of the relevant information that is shared at the meeting. Second, she

stated that Trader Joe's has a robust nondiscrimination policy, which they follow in all cases. Thirdly, she stated that Mr. Crawford would be fairly evaluated on his job performance and that his vaccination status will "of course" not be the basis for any negative performance evaluation. The response did not address the suggested accommodations.

17. Defendant refused to explore available reasonable alternatives to allow Mr. Crawford to do his job. Defendant refused to engage in any timely, interactive, meaningful, or good faith process with Plaintiff to accommodate his sincerely held religious beliefs.

18. Defendant's refusal to accommodate, or even explore possible accommodation of Plaintiff's religious beliefs was a substantial motivating factor in Defendant's decision to deprive Plaintiff of the employment he had enjoyed for 26 years.

19. A response was sent electronically to Ms. Cahan's email on July 29, 2021, at 10:36 AM. The response stated that while Mr. Crawford believes he is lawfully entitled to attend the meeting, he values his relationship with Trader Joe's and his superiors, and will forego attendance and wishes to settle the situation amicably if he receives some assurances that there will be no future discrimination based on his sincerely held religious beliefs.

20. No response was ever received from this electronic communication. Approximately five hours after the response was transmitted to Ms. Cahan, Mr. Crawford received a voicemail from Regional Vice President Donnie Martin, asking for the two of them to meet.

21. VP Martin called again the next day at 7:37 AM, July 30, 2021. He said he was in the Riverside area and asked to meet. The meeting took place at 10 AM at the Riverside Plaza. When he arrived, he asked how Mr. Crawford was doing (he knew Mr. Crawford's brother had passed away unexpectedly a few days ago, shortly after taking the COVID-19 vaccine). Mr. Crawford said it was a tough week. VP Martin then read an "Employee Incident Report" telling Mr. Crawford he was fired from Trader Joe's.

22. The Employee Incident Report listed a number of reasons for the termination. The first was that the core responsibilities for Captains include knowing and following company policies, such as the "Open Door Policy." This states that employees are "encouraged" to discuss

problems with superiors, and "may" call Human Resources. It also says "complaints should be filed with Human Resources as soon as possible after the event that led to your concern."

23. Words such as "encourage" and "may" are suggestive, not directive in nature, and are not used as a basis for termination. Mr. Crawford told his VP that he was being penalized for his religious beliefs. But the VP told him this was from the President, and he was only relaying the message. There would be no discussion. Also, the complaint was filed with Human Resources, directed to Laurie Mead on July 27, 2021.

24. The second reason given for his termination was that Mr. Crawford stopped communicating with his Regional VP. This is the same VP who told him this was from the President, and he was only relaying the message. There would be no discussion. He did not stop communicating with him, but he did not further discuss this issue as he was directed.

25. The third reason given for his termination was that he disregarded the Open Door Policy and approached the issue from an "adversarial perspective." As previously noted, this policy is suggestive, not directive. Mr. Crawford told his VP he was being penalized for his religious beliefs. Mr. Crawford was told it was a decision of President Jon Basalone and that there would be no further discussion. Mr. Crawford felt his religious liberty rights were being violated, and consulted legal counsel. Mr. Crawford, through counsel, pointed out that the company was required to attempt to accommodate his religious beliefs, and suggested reasonable accommodations. He later sent a letter of concession stating he agreed not to attend the meeting, in exchange for assurances of no further discrimination. This letter from Mr. Crawford's attorney is deemed by Trader Joe's as approaching an issue from an adversarial perspective.

26. The last reason for termination given was that Mr. Crawford acted in conflict with the interests of the company. Mr. Crawford merely informed the company that he felt his religious rights were being violated and suggested reasonable accommodations. Trader Joe's deems a request that it follow state and federal law relative to religious accommodation to be against the interests of Trader Joe's.

27. Trader Joe's retaliated against plaintiff for consulting an attorney because he felt he was being discriminated against for his religious beliefs. Retaliation for seeking counsel in matters of employee rights clearly spelled out in statutes are in violation of public policy.

28. Mr. Crawford's religious beliefs were a motivating factor in his termination. The Defendant violated his state and federal rights under Title VII, and California Govt. Code § 12900 et seq. with malice or reckless indifference. His termination was in retaliation for his asserting state and federal rights, and his termination was in violation of Public Policy.

29. Mr. Crawford's income and health insurance ceased immediately and unexpectedly after 26 years of service, placing a large burden on him to support his family.

30. On August 4, 2021, Mr. Crawford obtained a "Right to Sue" letter from the California Department of Fair Employment and Housing (DFEH). The California DFEH has a work sharing agreement with the U. S. Equal Employment Opportunity Commission (EEOC), which recognizes the common jurisdiction and goals of the agencies. A "Right to Sue" letter from either agency satisfies the requirements of both the EEOC and the DFEH. This letter serves as Exhibit 1 to this complaint.

## FIRST CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]
### Termination and Retaliation on the Basis of Religion

31. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as though fully set forth herein.

32. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

33. Mr. Crawford was at all times relevant herein an employee and applicant covered by 42 U.S.C. 2000e, et seq., prohibiting discrimination in employment on the basis of religion. Defendant was at all times herein employers for purposes of 42 U.S.C. 2000e, et seq.

34. Mr. Crawford had a deeply and sincerely held religious objection to receiving the COVID-19 vaccine, and was issued an initial exemption/accommodation recognizing that sincerely held belief.

35. Although he received an initial exemption/accommodation from the vaccine, Mr. Crawford was prohibited from attending a meeting that was a job expectation. It was for the vaccinated only. The company knew he did not get the vaccination because of his sincerely held religious beliefs. He was told this would affect his performance evaluation, which can have an impact on bonuses, his continued employment, and his overall work environment. This is an adverse job action.

36. Trader Joe's sought to segregate the plaintiff from the other Leaders Meeting attendees based on his religiously-motivated conduct. It was because of his sincerely held religious beliefs that he did not get vaccinated (an exemption / accommodation previously approved by Trader Joe's). He was excluded from the meeting because of that religious exemption / accommodation, but was told attendance is a job expectation, and failure to attend would reflect negatively on his performance evaluation, an adverse job action. They deprived him of an opportunity to perform his job expectations. They refused to consider reasonable accommodations that would allow him to attend.

37. Mr. Crawford explained how he could safely attend this meeting that was part of his job expectations, either remotely by Zoom (like last year) or he could be tested for COVID-19 prior to the meeting. Nevertheless, Defendant fired him after 26 years of loyal and dedicated service.

38. Plaintiff told his superior he was being penalized for his religious beliefs, and Plaintiff was told it was not going to be discussed. Plaintiff was terminated in retaliation for seeking legal counsel to help him assert his religious rights under Title VII. He was terminated for engaging in protected activity, specifically requesting a religious accommodation under Title VII and seeking legal advice as to the same.

39. Plaintiff's religious beliefs and practices were therefore a motivating factor in his termination.

40. Mr. Crawford suffered significant damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

41. Defendant intentionally violated Mr. Crawford's rights under Title VII with malice or reckless indifference.

42. Plaintiff is entitled to backpay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

43. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

## SECOND CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]

### Failure to Provide Religious Accommodation

44. Plaintiff hereby incorporates and realleges the preceding paragraphs, as though fully set forth herein.

45. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

46. Mr. Crawford suffered significant damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

47. Defendant intentionally violated Mr. Crawford's rights under Title VII with malice or reckless indifference.

48. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

49. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

## THIRD CAUSE OF ACTION

**Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 et seq.) – Discrimination and Retaliation on the Basis of Religious Creed**

50. Plaintiff hereby incorporates and realleges the preceding paragraphs, as though fully set forth herein.

51. Under FEHA, it is further an unlawful employment practice for an employer to discriminate against an employee in compensation, terms, conditions or privileges of employment, because of the employee's religious creed.

52. Mr. Crawford was at all times relevant herein an employee for purposes of FEHA.

53. Defendant was at all times relevant herein employer for purposes of FEHA.

54. Plaintiff was at all times relevant herein a member of a protected religious class.

55. FEHA broadly defines religious creed to include all aspects of observance and practice.

56. Defendant intentionally discriminated against Mr. Crawford by making an adverse employment decision against him—by terminating his employment after 26 years of dedicated service.

57. Defendant demonstrated discriminatory animus toward Plaintiff by abruptly terminating his employment and showing callous indifference toward his sincerely held religious beliefs. Plaintiff was terminated in retaliation for seeking legal counsel to help him assert his religious rights under FEHA. He was terminated for engaging in protected activity, specifically requesting a religious accommodation under FEHA and seeking legal advice as to the same.

58. Defendant terminated Plaintiff's employment because of his religious creed. Defendant discriminated against the Plaintiff on the basis of his religious beliefs.

59. Mr. Crawford suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

60. Defendant intentionally violated Mr. Crawford's rights under FEHA with malice or reckless indifference, and, as a result, are liable for punitive damages.

61. Plaintiff is entitled to such other and further relief as set forth below in his Prayer for Relief.

## FOURTH CAUSE OF ACTION

**Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 et seq.) – Failure to Provide Religious Accommodation**

62. Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

63. Under FEHA, it is an unlawful employment practice for an employer to terminate a person's employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer demonstrates that it has explored any available reasonable means of accommodating the religious belief or observance.

64. Plaintiff was a person and an employee of Defendant within the meaning of FEHA.

65. Defendant was at all times relevant herein employer of Plaintiff for purposes of FEHA.

66. Plaintiff is a devout evangelical Christian. Defendant was aware of his sincerely held religious beliefs.

67. Like many evangelical Christians, Plaintiff holds strong beliefs based on his understanding of Scripture.

68. Although already being given an initial religious exemption/accommodation from the vaccine, Plaintiff was prohibited from attending a meeting that was a job expectation. It was for the vaccinated only. Defendant knew Plaintiff did not get the vaccination because of his sincerely held religious beliefs. Plaintiff was told this would affect his performance evaluation, which can have an impact on bonuses, his continued employment, and his overall work environment. This is an adverse job action.

69. Mr. Crawford tried to discuss this with his supervisor, telling him he was being penalized for his religious beliefs. His supervisor told him this was from the company president and would not be discussed further.

70. Mr. Crawford, through his legal counsel, then wrote to Human Resources providing proposed accommodations for his sincerely held religious beliefs.

71. Mr. Crawford explained how he could safely attend this meeting that was part of his job expectations, either remotely by Zoom (as was done last year) or he could be tested for COVID-19 prior to the meeting. He requested a religious accommodation. In response, Defendant fired him after 26 years of loyal and dedicated service. No accommodation for religious beliefs was discussed with Plaintiff.

72. Defendant refused to explore available reasonable alternatives to allow Mr. Crawford to do his job. Defendant refused to engage in any timely, interactive, meaningful, or good faith process with Plaintiff to accommodate his sincerely held religious beliefs.

73. Defendant's refusal to accommodate, or even explore possible accommodation of Plaintiff's religious beliefs, was a substantial motivating factor in Defendant's decision to deprive Plaintiff of the employment he had enjoyed for 26 years.

74. Mr. Crawford notified his immediate supervisor and Human Resources of the conflict, then sought and proposed simple and reasonable accommodations. Plaintiff's suggested accommodations were categorically rejected by Defendant, and Plaintiff was terminated.

75. Mr. Crawford suffered significant damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

76. Defendant intentionally violated Mr. Crawford's rights under FEHA with malice or reckless indifference.

77. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

78. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

## FIFTH CAUSE OF ACTION

### Wrongful termination in violation of public policy—Common Law Tort

79. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as though fully set forth herein.

80. Mr. Crawford was terminated for requesting a religious accommodation in compliance with both Title VII of the Civil Rights Act of 1964, and Cal. Govt. Code § 12900 et seq.

81. Cal. Govt. Code § 12920 states: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed."

82. Cal. Govt. Code § 12920 goes on to state: "Further, the practice of discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability,

veteran or military status, or genetic information in housing accommodations is declared to be against public policy."

83. Mr. Crawford was at all times relevant herein an employee of Defendant and covered by 42 U.S.C. 2000e, et seq., prohibiting discrimination in employment on the basis of religion.

84. Defendant was at all times herein an employer for purposes of 42 U.S.C. 2000e, et seq.

85. Plaintiff was a person and an employee of Defendant within the meaning of FEHA.

86. Defendant was at all times relevant herein an employer of Plaintiff for purposes of FEHA.

87. Plaintiff is a devout evangelical Christian. Defendant was aware of his sincerely held religious beliefs.

88. Mr. Crawford had a deeply and sincerely held religious objection to receiving the COVID-19 vaccine, and was issued an initial exemption/accommodation recognizing that sincerely held belief.

89. Although already being given an initial exemption/accommodation from the vaccine, he was prohibited from attending a meeting that was a job expectation. It was declared to be for the vaccinated only. The company knew he did not get the vaccination because of his sincerely held religious beliefs. He was told this would affect his performance evaluation, which can have an impact on bonuses, his continued employment, and his overall work environment. This is an adverse job action.

90. Mr. Crawford explained how he could safely attend this meeting that was part of his job expectations, either remotely by Zoom (like last year) or he could be tested for COVID-19 prior to the meeting. Nevertheless, Defendant fired him after 26 years of loyal and dedicated service.

91. Plaintiff told his superior he was being penalized for his religious beliefs, and

Plaintiff was told it was not going to be discussed. Plaintiff was terminated in retaliation for seeking legal counsel to help him assert his religious rights under Title VII and FEHA. Such actions in retaliation for consulting legal counsel regarding employees' rights against discrimination based on religion is against public policy in the State of California.

92. There were no valid reasons whatsoever for terminating Plaintiff's employment, other than Plaintiff retaining counsel and requesting accommodation under Title VII and FEHA.

93. Plaintiff's religious beliefs and practices were therefore a motivating factor in his termination. Plaintiff was wrongly terminated for pursuing his rights to seek an accommodation of his sincerely held religious beliefs under Title VII and the FEHA.

94. FEHA declares by statute that such unlawful termination is in violation of public policy.

95. Mr. Crawford suffered significant harm as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

96. Defendant intentionally violated Mr. Crawford's rights under Title VII and FEHA with malice or reckless indifference.

97. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

98. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

**PRAYER FOR RELIEF**

WHEREFORE, MR. CRAWFORD respectfully prays this Court grant relief as follows:

A. Award Plaintiff backpay, including past loss of wages and benefits, plus interest;

B. Award Plaintiff his front pay, including future wages and benefits;

C. Award Plaintiff other and further compensatory damages in an amount according to proof;

D. Award Plaintiff noneconomic damages, including but not limited to mental suffering;

E. Award to Plaintiff his reasonable attorney's fees and costs of suit;

F. Award Plaintiff punitive damages;

G. Enjoin Defendant from enforcing their discriminatory policies;

H. Declare that Defendant has violated Title VII of the Civil Rights Act and FEHA; and

I. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated: September 7, 2021

/s/ Ronald Hackenberg
Matthew B. McReynolds
Ronald J. Hackenberg

*Attorneys for the Plaintiff, Gregg Crawford*

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action and claims to which he has a right to a jury trial.

/s/ Ronald Hackenberg
Matthew B. McReynolds
Ronald J. Hackenberg

*Attorneys for the Plaintiff, Gregg Crawford*

Plaintiff demands a jury trial on all causes of action and claims to which he has a right to a jury trial.

/s/ Matthew B. McReynolds
Matthew B. McReynolds
Ronald J. Hackenberg

Attorneys for the Plaintiff, Gregg Crawford

**VERIFICATION**

I, Gregg Crawford, am the Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.] and am familiar with same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct. Executed this 30th day of August, 2021, in the County of Riverside, State of California.

Gregg Crawford